# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JILL LEFF, CLAUDIA KRAUSE, KRISTA SHIELDS, CHRISTOPHER STEWART, NEKISHA SIMPSON, CARRIE CHAPPELL, CAROLYN DOYEL, KODZO ATTILA, JOSEPH PORTILLA, AMANDA LA FORTE, PATRICIA WEBB, MARY RICE, BARBARA GAMMAGE, FRANCIS SIMONE BOJAR, GLEN ROWLEY, and CLARK COUNTY EDUCATION ASSOCIATION, an employee organization,<br><br>Plaintiffs,<br><br>v.<br><br>CLARK COUNTY SCHOOL DISTRICT, a county school district,<br><br>Defendant. | Case No. 2:15-cv-01155-RFB-GWF<br><br>**ORDER**<br><br>Defendants' Motion to Dismiss Plaintiff's Complaint (ECF No. 9) |

## I.     INTRODUCTION

Before the Court is a Motion to Dismiss filed by Defendant Clark County School District ("District") (ECF No. 9). The Court has reviewed the parties' papers and heard oral argument. For the reasons discussed below, Defendant's motion is granted in part, and denied in part.

**II.     BACKGROUND**

On June 18, 2015, Plaintiffs filed this complaint, listing causes of action for violation of the Contracts Clause of the United States Constitution, and denial of procedural due process under the United States Constitution. ECF No. 1. The Court will briefly summarize Plaintiffs' allegations:

Plaintiffs are fifteen former teachers, and their collective bargaining representative, the Clark County Education Association. ECF No. 1 at 1. At the end of the 2011-12 and 2012-13 school years, each of Plaintiff Teachers received "unsatisfactory" ratings for their performance. On or around April 25, 2014, the District sent Plaintiff Teachers notices of nonrenewal, stating that their employment would cease at the end of the 2013-14 school year. Id. at 7.

Under the applicable statutory framework prior to 2011, completion of a probationary period of employment, and being rehired for the school year following that period, would confer postprobationary status. Id. at 6. Probationary teachers can be nonrenewed without cause, and without a notice or hearing, at the end of each school year. Id. Postprobationary teachers could only be suspended, dismissed, or not reemployed, for cause (including inefficiency, immorality, unprofessional conduct, insubordination, neglect of duty, inadequate performance, evident unfitness for service, or failure to show normal improvement and evidence of professional training and growth). Id. (internal quotations omitted). Further, postprobationary teachers are entitled to notice and a hearing before an impartial hearing officer if recommended for dismissal or nonrenewal, while probationary teachers are entitled to no process if nonrenewed at the end of a school year. Id. (citing NRS 391.31297).

In June of 2011, the Nevada Legislature enacted AB 225, which amended NRS Chapter 391 to create a new section (codified as section 391.3129), which provides in relevant part:

> A postprobationary employee who receives an unsatisfactory evaluation pursuant to NRS 391.3125 or 391.3127, as applicable, or other equivalent evaluation designating his or her overall performance as below average, for 2 consecutive school years shall be deemed to be a probationary employee for the purposes of NRS 391.311 to 391.3197, inclusive, and

must serve an additional probationary period in accordance with the provisions of NRS 391.3197. Id. at 7.

The effect of the statute was that two negative reviews by a school administrator would cause a postprobationary teacher to revert to the status of probationary teacher with no right to reemployment at the end of the school year and no right to notice and a hearing before being nonrenewed. Id.

Because of "unsatisfactory" reviews at the end of the 2011-12 and 2012-13 school years, Plaintiff teachers automatically reverted from postprobationary to probationary status pursuant to the above-described statutory framework. Id. On or around April 25, 2014, the District sent Plaintiff Teachers notices of nonrenewal, stating that their employment would cease at the end of the 2013-2014 school year. Id. Plaintiff teachers were not renewed following the end of the 2013-14 schoolyear. Id. at 9. Plaintiff teachers did not receive any notice or any hearing regarding their postprobationary status at the end of the 2012-13 school year or regarding their nonrenewal at the end of the 2013-14 school year.

### III.   LEGAL STANDARD

An initial pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The court may dismiss a complaint for failing to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Sec. Servs., Inc., 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted).

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but merely asserting "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is not sufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In other words, a claim will not be dismissed if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct

alleged." Iqbal, 556 U.S. at 678 (citation and internal quotation marks omitted). In elaborating on the pleading standard described in Twombly and Iqbal, the Ninth Circuit has held that for a complaint to survive dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

## IV. DISCUSSION
### A. Plaintiffs' Contracts Clause Claim
#### 1. Legal Standard

The Supreme Court "has maintained that absent some clear indication that the legislature intends to bind itself contractually, the presumption is that a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise." Nat'l R.R. Passenger Corp. v. Atchinson Topeka and Santa Fe Ry. Co., 470 U.S. 451, 465-66 (1985). "In determining whether a particular statute gives rise to a contractual obligation, it is of first importance to examine the language of the statute. . . If it provides for the execution of a written contract on behalf of the state, the case for an obligation binding upon the state is clear . . . But absent an adequate expression of an actual intent of the State to bind itself, this Court simply will not lightly construe that which is undoubtedly a scheme of public regulation to be, in addition, a private contract to which the State is a party." Id. at 467 (internal quotations and citations omitted). In Nat'l R.R. Passenger Corp., the Supreme Court found "absolutely no congressional intention" to have the United States enter into private contractual agreement with railroads where the Act did not explicitly speak of a contract between the United States and the railroads, and "did not in any respect provide for the execution of a written contract *on behalf of the United States.*" Id. at 467 (emphasis in original). In Pittman v. Chicago Bd. of Educ., 64 F.3d 1098, 1104 (7th Cir. 1995), the Seventh Circuit found that the elimination of tenure for public school principals did not violate an alleged contract with the state, reiterating the rationale for the presumption against finding that legislation establishes contracts with the state: "To treat statutes as contracts would enormously curtail the operation of democratic government." Id.

- 4 -

In State v. Indiana Ex Rel. v. Brand, 303 U.S. 95 (1937), the Supreme Court found that an Indiana law created contracts with the state, where the law spoke explicitly in terms of contracts with the state school corporation. See Id. at 101-102 ("By this act it was provided that a teacher who had served under contract for five or more successive years . . . shall become a permanent teacher and the contract . . . shall be deemed to continue in effect for an indefinite period, shall be known as an indefinite contract[.]") The Court noted that as to the question of whether the law created contracts, "the sufficient answer is found in the statute." Id. at 107. The case further states that "the Supreme Court [of Indiana] had uniformly held that the teacher's right to continued employment by virtue of the indefinite contract created pursuant to the act was contractual." Id. at 105.

### 2. Discussion

Relying extensively on State v. Indiana Ex Rel. v. Brand, 303 U.S. 95 (1937), Plaintiffs argue that legislation that reflects "a policy of contracting . . . for a term longer than the life of the current session of the legislature" may establish an obligation under the Contracts Clause.  They argue that the allegations that teachers had worked under the prior regime for fifty years, and that postprobationary status under that regime guaranteed for cause employment as well as notice and hearing prior to termination, among other allegations, satisfy that requirement and state a plausible claim for violation of their rights under the Contracts Clause.

Defendant responds by noting that Brand relied on statutory text and Indiana law unambiguously establishing that the statute created indefinite contracts with the state. It further contends that Plaintiffs' citation to and quotes of the relevant statute fails to establish the requisite clear intent for a statute to create contracts with the state that cannot be overridden by subsequent legislation.

The Supreme Court has held that statutory text is of "first importance" in determining whether or not a statute creates vested contracts protected by the Contracts Clause. Plaintiffs' complaint nowhere references or quotes statutory text (nor has the Court found any statutory language in Nevada law) that could be construed as "an adequate expression of actual intent" to bind the state, sufficient to overcome the presumption against a finding of vested contracts. Nor

does the complaint invoke any Nevada caselaw that might support an interpretation of the text to create vested contracts. Rather, the complaint relies on the laws description of changes in status and the concomitant benefits or lack thereof. As such, Plaintiffs have not plausibly demonstrated that the law created vested contracts protected by the Contracts Clause.

Therefore, the Court grants Defendant's Motion as to Count One.

### B. Plaintiffs' Procedural Due Process Claim

#### 1. Legal Standard

"The Fourteenth Amendment protects against the deprivation of property or liberty without procedural due process. [One] only has a constitutionally protected property interest in continued employment, however, if [one] has a reasonable expectation or a legitimate claim of entitlement to it, rather than a mere unilateral expectation. A legitimate claim of entitlement arises if it is created by existing rules or understandings that stem from an independent source such as state law. Thus, state law defines what is and what is not property that is subject to the due process clause of the Fourteenth Amendment." Brady v. Gebbie, 859 F.2d 1543, 1547-48 (9th Cir. 1988) (internal quotations and citations omitted). "A state law which limits the grounds upon which an employee may be discharged, such as conditioning dismissal on a finding of cause, creates a reasonable expectation of continued employment, and thus a protected property right. Where state employees serve at the will of the appointing authority, however, there is no such reasonable expectation of continued employment, and thus no property right." Id. at 1548 (internal quotations and citations omitted); see also Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-39 (1985) ("A statute granting entitlement to continued employment absent malfeasance or nonfeasance in office creates such a vested property right in continued employment.").

Once it has conferred a protected property interest in tenured employment, the legislature "may not constitutionally authorize the deprivation of such an interest . . . without appropriate procedural protections." Loudermill, 470 U.S. at 541. At a minimum, Due Process requires "notice and an opportunity to respond" prior to an individualized determination that eliminates the property interest in employment that, under state law, can only be terminated for cause. See Id. at 546-47 (finding a violation of procedural due process where a public employee security guard, a

"classified civil servant" terminable only for cause, was terminated because of an alleged felony conviction without an opportunity to respond).

The protected property right in the reasonable expectation of continued employment, created by the legislature, may also be extinguished by it. See Brady, 859 F.3d at 1550 (Alleged agreement could not establish property right where legislature had reclassified state employee, eliminating for cause protections). "The Nevada Supreme Court has held that Nevada's legislature may modify or abolish any state office. When a state alters a state-conferred property right through the legislative process, the legislative determination provides all the process that is due[.] Thus, the legislative process is sufficient to comport with minimal federal due process requirements." Rea v. Matteucci, 121 F.3d 483, 485 (9th Cir. 2012) (internal quotations and citations omitted). Thus when the legislature reclassifies an employee who can only be terminated for particular reasons, as an employee who can be terminated for any reason, it eliminates the state-conferred procedural due process property right, and the employee may be terminated for any reason. See Id. (Nevada legislature extinguished property right when it eliminated requirement that hearing officers could be terminated only for just cause). However, "a federal interest remains in protecting the individual citizen from state action that is wholly arbitrary or irrational." Id.

Where, however, the legislature enacts a scheme in which the state-conferred property right may be eliminated only by particularized determinations, constitutional due process requires, at a minimum, notice and an opportunity to respond. See Loudermill, 470 U.S. at 546-47 (state-conferred property right in tenured employment terminable only for cause could not be denied without notice and opportunity to be heard). In Greeene v. Babbitt, 64 F.3d 1266 (9th Cir. 1995), the Ninth Circuit applied this standard to a pre-existing property right modified by statute. Individual members of the Plaintiff Tribe had been receiving health and other benefits that constituted vested property rights for purposes of due process analysis. Id. at 1274. The Court found that when new law made continued receipt of the benefits contingent upon official recognition of the tribe by the federal government, the individuals had a right to procedural due process with regard to the determination of whether or not the federal government officially

1  recognized the Tribe, and that that right could be asserted by the Tribe on behalf of its members.
2  Id. at 1273-74.

### 2. Discussion

Plaintiffs have sufficiently pled an applied due process challenge to their loss of postprobationary status.

Defendant's Motion to Dismiss argues that this is a case in which the legislature extinguished the property right to the expectation of future employment, as unambiguously permitted by the Supreme Court and the Ninth Circuit. See, e.g. Rea, 121 F.3d at 485. Plaintiffs respond that the legislature did not directly eliminate the property right, but delegated that function to school officials required to do so based on individualized determinations (of whether or not performance was "unsatisfactory") as occurred in, among other cases, Loudermill, 470 U.S. 532 (1985). Defendant's reply asserts that this argument cannot apply to the nonrenewal of teachers, as at the point of nonrenewal, plaintiffs had already lost their property right to for cause employment pursuant to the statutory scheme.

Defendant further argues that as applied to the loss of postprobationary status, this was a case of "across-the-board" eligibility changes by which a legislature may extinguish property rights without any constitutionally required process other than that of the legislative process itself, as opposed to individual eligibility determinations requiring minimal procedures under the Due Process Clause. It argues that the unsatisfactory reviews are not individualized determinations, but rather a "simple calculation" that triggers the loss of the postproabtionary status. To support this argument, Defendant cites Atkins v. Block, 472 U.S. 115 (1985), in which the Supreme Court declined to find process requirements where changes in the income calculation used to determine food stamps eligibility constituted a "legislatively mandated change in the scope of the entire program," as opposed to "individual eligibility determinations." Id. at 128-29.

Plaintiffs have argued that their termination based upon individualized determinations, i.e. their unsatisfactory evaluations, violates due process.  The Plaintiffs have also alleged that they lost their postprobationary status without notice or hearing.  While the Plaintiffs have focused on termination in their discussion, the Court finds that the focal inquiry for constitutional analysis is

the loss of the posprobationary status and not the terminations themselves. For it is the loss of the status which creates the possibility for termination without cause. To the extent that Plaintiffs have a property right, it is not a right to employment without termination, rather it is the right to employment with termination only for cause.

The Court finds that the Plaintiffs have sufficiently pled a property interest in their postprobationary status. The Ninth Circuit has characterized the property right at issue in these cases as "a reasonable expectation of continued employment." Brady v. Gebbie, 859 F.2d 1543, 1548 (9th Cir. 1988). That employment terminable only for cause creates a vested property right for the purposes of procedural due process is well established. See e.g. Loudermill, 470 U.S. at 538-39. In Count 2, Plaintiffs allege that "Plaintiff Teachers did not receive any notice or any pre-deprivation or post-deprivation hearing regarding their postprobationary status at the end of 2012-13 school year or regarding their nonrenewal at the end of the 2013-14 school year." ECF No. 1 at 9. This loss of status is, in effect, an allegation of a deprivation of the state-conferred property right in tenured employment, based on individualized determinations as to whether performance is "unsatisfactory" or not. The Defendant's attempt to separate the postprobationary status from the postprobationary employment is unpersuasive. The property right interest in the tenure status is indistinguishable from the property right interest in the tenured employment itself. That is because the effect of losing the status is the loss of the right to tenured employment regardless of whether or not a person is terminated. Thus, the Plaintiffs have alleged a loss of a property right by means of individualized determinations.

Defendant contends that these are not individualized determinations at all, but rather a "simple calculation" that triggers the loss of the postprobationary status, the kind of "across-the-board" change that does not trigger procedural due process protections. The Court rejects this argument. The plain language of the statute references an "evaluation" of an individual employee's "performance" as the mechanism resulting in a loss of the status. N.R.S. 391.3129. It is difficult to imagine a more clearly individualized determination or triggering mechanism than an employee's performance evaluation. It is not logical to conclude that this language applies to an "across-the-board" evaluation of all District teachers. Plaintiffs have plausible alleged that

these are the kinds of individual determinations that require minimal due process when protected property rights are at issue. While it is true that two unsatisfactory reviews automatically triggers the change in status pursuant to the statute, it is ultimately the individualized determination of the quality of performance that leads to the status change / loss of the protected right in tenured employment.

Indeed, this case is not meaningfully distinguishable from <u>Loudermill</u>. Here the individualized determination of whether or not performance was "unsatisfactory" eliminates employment protections, making teachers terminable at a later time—the end of that school year—while in <u>Loudermill</u> the individualized determination led to immediate termination. <u>Id.</u> Thus the Legislature in this case is not simply altering or eliminating the property right, as it has a right to do, but is designating the determination of the loss of the right to the District based upon an individualized determination.

The Plaintiffs have alleged that the loss of this property right, their postprobationary status, occurred without any notice or process. Therefore, having pled that they lost their protected property interest in tenured employment based on individualized determinations made without notice or a hearing, Plaintiffs have stated a claim for an as-applied violation of procedural due process.

### V.  CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's [ECF No. 9] Motion to Dismiss is GRANTED IN PART and DENIED IN PART, as follows:

Count I (Violation of the Contracts Clause) is dismissed.

Count II (Due Process Clause) is not dismissed.

**DATED** this <u>26th</u> day of September, 2016.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**