# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

JILL LEFF, et al.,

    Plaintiffs,

v.

CLARK COUNTY SCHOOL DISTRICT,
a county school district,

    Defendant.

Case No. 2:15-cv-01155-RFB-GWF

**OPINION & ORDER**

Parties' Cross-Motions for Summary Judgment

(ECF Nos. 34 and 35)

## I. INTRODUCTION

Before the Court is Plaintiffs' Motion for Summary Judgment, (ECF No. 34), and Defendant's Motion for Summary Judgment, (ECF No. 35). The Court has read the parties' papers and heard oral argument. For the reasons stated below, Plaintiffs' Motion is granted and Defendant's Motion is denied.

## II. PROCEDURAL BACKGROUND

On June 6, 2015, Plaintiffs filed their Complaint stating causes of action under the Contracts Clause and Due Process Clause of the Constitution pursuant to 42 U.S.C. § 1983. (ECF No. 1). Defendant Clark County School District (the "District") filed a Motion to Dismiss on September 4, 2015. (ECF No. 9). On September 26, 2016, this Court granted the motion as to the Contracts Clause claim and denied the motion as to the due process claim. The Court found that Plaintiffs had not demonstrated that the Nevada Legislature had bound the State into maintaining its post-probationary status classification under NRS Chapter 391. (ECF No. 24 at 5–4). The Court also held that Plaintiffs had a protected property interest in post-probationary employment that was

independent of termination. Additionally, the Court found that the Legislature had designated the District to determine which teachers would lose post-probationary status based on individualized determinations of a teacher's performance. Id. at 10. This individualized-determination process required the District to provide the post-probationary employees with due process.

The parties completed discovery and filed Cross-Motions for Summary Judgment on May 25, 2017. (ECF Nos. 34–35). The parties submitted their respective responses on June 30, 2017. (ECF No. 42–43). Plaintiffs filed their reply on July 14, 2017. (ECF No. 45). Finally, Defendants filed their reply on July 27, 2017. (ECF No. 46).

### III. UNDISPUTED FACTS

The Court finds the following facts to be undisputed.

#### A. The Plaintiff Teachers

Plaintiffs are fifteen former District teachers and their labor union representative, the Clark County Education Association (the "CCEA"). Plaintiff Teachers were hired before June 2011 and had received post-probationary status, meaning that the District could only fire them for cause. (ECF No. 34 at 3). Plaintiffs received unsatisfactory performance evaluations at the end of the 2011-12 and 2012-13 school years. (ECF No. 35 at 3). The evaluations included a scaled performance rating and a narrative discussing the teacher's performance. The evaluations did not state whether a teacher could lose their post-probationary status based on the results or mention that teachers could dispute their evaluations and/or loss of post-probationary status through the District's collective bargaining agreement (the "CBA") with Plaintiffs.

In addition to the evaluations, the District gave Plaintiff Teachers Notices of Intent communicating the District's offer to retain teachers for the following school year. (ECF No. 35 at Ex. 1). The teachers received the Notices of Intent between April 12, 2013 and May 16, 2013. Each notice stated in bolded, uppercase letters "PROBATIONARY." Id. Like the evaluations, the notices did not refer to a change in post-probationary status or to the CBA. Plaintiff Teachers all signed the notices before the end of the 2012-13 school year and returned to work in the fall. Plaintiff Teachers signed probationary contracts for the 2013-14 school year between October and

November 2013 and the District terminated them after each received a third consecutive unsatisfactory evaluation.

### B. Nevada Statutory Scheme

During the 2011 Nevada legislative session, legislators passed AB 225, which altered existing protections for post-probationary employees. AB 225 provided, in relevant part, that post-probationary teachers who receive unsatisfactory evaluations in two consecutive years revert to probationary status. Nev. Rev. Stat. § 391.3129 (2011); (ECF No. 35). Once reverted to probationary status, teachers could be terminated without cause and had no right to reemployment at the end of the year. Nev. Rev. Stat. § 391.3197 (2011). Under Nevada law, a school district must give post-probationary and probationary employees written notice of the superintendent's intention to demote, dismiss, or not reemploy the employee fifteen days before making the recommendation. Nev. Rev. Stat. §391.317 (2011). The notice must state the grounds for the superintendent's recommendation and inform the employee that they have a right to hearing. Id. AB 225 amended NRS §391.317 to provide notice and expedited arbitration procedures for post-probationary teachers who had reverted to probationary status and who the school district would be dismissing before the end of the year. Assem. B. 225 § 5, 76th Sess. (Nev. 2011). However, the notice provision does not apply to post-probationary teachers at risk of losing post-probationary status because the loss of post-probationary status is not considered a demotion or dismissal under the statute. See Nev. Rev. Stat. §§ 391.311(5) -391.312 (2011). AB 225 further limited the rights of teachers who lost their post-probationary status by providing that the due process provisions in Chapter 391 do not apply to teachers who have a collective bargaining agreement with a school district. Assem. B. 225 § 4, 76th Sess. (Nev. 2011). These changes took effect on July 1, 2011.

The 2011 Nevada Legislature passed AB 229 as a companion bill to AB 225. AB 229 provides protections for employees who lost their post-probationary status. For example, after a post-probationary teacher receives an initial unsatisfactory evaluation, a school district must evaluate that teacher three times in the following school year to prevent them from receiving a second unsatisfactory evaluation that would trigger the automatic-reversion provision under AB 225. Assem. B. 229 §4, 76th Sess. (Nev. 2011). The post-probationary teacher could request that

a different administrator conduct the third evaluation. <u>Id.</u> These protections applied to teachers hired on or after July 1, 2011 and became effective on July 1, 2013.

This statutory scheme did not provide teachers with a process to contest unsatisfactory evaluations nor to contest reverting to probationary status after two consecutive unsatisfactory evaluations. (ECF No. 34 at 6). While the automatic-reversion under AB 225 applied to Plaintiffs, the AB 229 protections did not apply because Plaintiff Teachers were all hired before 2011 and lost post-probationary status at the end of the 2012-13 school year. (ECF No. 34 at 5). Therefore, the CBA was the sole means available to Plaintiff Teachers to dispute the loss of post-probationary status. Assem. B. 225 §5, 76th Sess. (Nev. 2011)

### C. The Collective Bargaining Agreement

Plaintiff CCEA is an employee organization that bargains with the District on behalf of teachers with respect to the terms and conditions of their employment. (ECF No. 35 at 4). Plaintiff Teachers were covered the CBA, which included grievance and arbitration provisions. (ECF No. 35, Ex. 2 at Ex. A).

Article 14 of the CBA allows teachers to provide a written response to "any written report, comment, reprimand, or other document concerning the teacher." <u>Id.</u> at Article 14. Article 4 of the CBA establishes a three-step grievance and arbitration process. Step One is an informal discussion/mediation, through which the teacher may schedule a meeting with their supervisor to contest the personnel document at issue or CCEA may present the District with a written proposal to resolve the contested document. <u>Id.</u> at Articles 4-3 and 4-4. If Step One does not resolve the issue, the teacher may submit a written grievance pursuant to Step Two. <u>Id.</u> at Article 4-5(a). If a written grievance is filed, the Associate Superintendent, Human Resources Division, or their designee, must schedule a meeting with the teacher to be held within twenty days, unless timeliness is waived by the teacher or CCEA. <u>Id.</u> If the dispute is not resolved at the Step Two meeting, the Associate Superintendent, Human Resources Division, or their designee, will submit a written response to the grievance to the teacher or CCEA within ten days after the meeting. <u>Id.</u> at 4-5(c). If the grievance is not resolved in Steps One or Two, CCEA may request arbitration of the unresolved grievance. <u>Id.</u> at 4-6(a).

Step Three establishes the arbitration procedures. Importantly, only CCEA has the right to request arbitration. Id. 4-9. The American Arbitration Association (AAA) provides the service and uses its rules. Id. at 4-6. The arbitrator has the authority to rule only on disputes that meet the definition of "grievance" under the CBA, which it defines as "any dispute which arises regarding the interpretation, application, or alleged violation of any of the provisions of this Agreement." Id. 4-7; 4-1. The District and CCEA bear the arbitration costs. Id. at 4-9. Finally, the arbitrator's decision is "final and binding on all parties to the Agreement unless the arbitrator exceeds the powers specified . . . or is guilty of procedural error prejudicing the rights of either party as defined by federal labor law decisions." Id. at 4-8.

### III. LEGAL STANDARD

#### A. Motion for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering the propriety of summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial ." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted).

### IV. DISCUSSION

The Court must determine whether a constitutional violation has been established and then address the question of whether such a violation has been established as a policy or practice.

Plaintiffs argue that, in implementing AB 225, the District deprived Plaintiff Teachers of

due process when it divested them of their post-probationary status without notice or a pre-deprivation hearing. Additionally, Plaintiffs argue that any post-deprivation process provided through the CBA was inadequate—primarily due to the lack of notice—and that its grievance and arbitration procedures did not provide a meaningful opportunity to be heard. In response, the District argues that Plaintiff Teachers had notice that they would lose their post-probationary status from three sources: (1) the presumption that they knew that AB 225 applied to them based on the legislative process, (2) the second unsatisfactory evaluation which triggered AB 225, and (3) the Notices of Intent that included the word "PROBATIONARY."

The Court finds that the AB 225 did not provide for a pre-deprivation hearing, but that a collective bargaining agreement can provide the necessary due process. Thus, the Court does not find the statute or related statutes to be facially unconstitutional. The application of these statutes in this case, however, was unconstitutional. As explained below, Plaintiff Teachers did not receive notice that they would lose post-probationary status or notice of procedures available for them to challenge the evaluations before they lost post-probationary status. Additionally, the CBA does not provide for a meaningful opportunity to be heard and the District has not provided any reason why it could not feasibly provide a pre-deprivation hearing. Therefore, the District deprived Plaintiff Teachers of due process because the CBA's procedures do not meet due process requirements.

### A. Legal Standard – Due Process

The United States Constitution provides that no person shall be deprived of life, liberty, or property without due process of the law. U.S. Const. amend. XIV §1. Whether a law amounts to a violation of procedural due process rights requires a two-step inquiry: "the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Ky. Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989) (internal citations omitted).

#### *i. Protected Right*

This Court previously held that the Nevada Legislature created a protected property interest in post-probationary status with an expectation of continued tenured employment that is

independent from the employment itself. (ECF No. 24 at 7–10.) (citing <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 538-39 (1985) and <u>Brady v. Gebbie</u>, 859 F.2d 1543, 1547-48 (9th Cir. 1988)). After the Nevada Legislature created the protected property interest in post-probationary status, it could modify or extinguish it but could "not constitutionally authorize the deprivation of such an interest" without providing due process. <u>Loudermill</u>, 470 U.S. at 541; <u>Brady</u>, 859 F.3d at 1550; <u>Rea v. Matteucci</u>, 121 F.3d 483, 485 (9th Cir. 2012). Further, AB 225 delegated authority to the District to determine which teachers would lose their post-probationary status based on the District's individualized determinations of a teacher's performance. This Court held that because a teacher's post-probationary status was conditioned on individualized determinations, the District was required to provide notice and an opportunity to respond. (ECF No. 24 at 7).

### ii. *What Process is Due*

In determining what process is due and whether it should be provided before or after a deprivation, courts apply the <u>Mathews</u> balancing test. <u>Brady</u>, 859 F.2d at 1554 (citing to <u>Mathews v. Eldridge</u>, 424 U.S. U.S. 319, 334–35 (1976)). The <u>Mathews</u> test "balances 1) the private interest that will be affected, 2) the risk of an erroneous deprivation of that interest through the procedures used, and 3) the additional cost and administrative burdens those additional procedures would entail." <u>Id.</u> (internal citation marks omitted).

**1. Notice**

Notice is a fundamental due process requirement and must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." <u>Mullane v. Cent. Hanover Bank & Tr. Co.</u>, 339 U.S. 306, 314 (1950). Valid notice apprises the interested party of the charges or accusations against him or her, is given before the final determination is made, and informs the party of available procedures to present his or her side of the story. <u>Loudermill</u>, 470 U.S. at 546 ("The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."); <u>Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.</u>, 149 F.3d 971, 986 (9th Cir. 1998) (finding that the school district's two memoranda advising the employee that his salary would be reduced was sufficient

notice at the pre-deprivation stage). Notice that apprises an individual of an impending termination, without more, "does not comport with constitutional requirements when it does not advise the [party] of the availability of a procedure for protesting a proposed termination . . ." Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 15 (1978). In Memphis Light, the Supreme Court found that a utility company had not provided consumers with adequate notice when it sent a final bill stating that termination was impending because the bill did not include information on how consumers could dispute a wrongful termination. Id. Therefore, valid notice must provide the individual with the charges against him or her and information on how to dispute those charges. Id.

### 2. Hearing

Due process requires an opportunity to be heard "at a meaningful time and in a meaningful manner." Mathews, 424 U.S. at 335; Samson v. City of Bainbridge Island, 683 F.3d 1051, 1059 (9th Cir. 2012) (finding that "due process of law requires an opportunity for some kind of hearing prior to the deprivation of a significant property interest.") (internal citations omitted). "[W]hen the hearing must be held and what procedural protections must be given at the hearing is determined on a case-by-case basis." Brady, 859 F.2d at 1554. A state must generally provide a pre-deprivation hearing unless it is "unduly burdensome to do so in proportion to the liberty interest at stake, or where the State is truly unable to anticipate and prevent a random deprivation of a liberty interest, postdeprivation remedies might satisfy due process." Zinermon v. Burch, 494 U.S. 113, 132 (1990) (internal citations omitted). Moreover, the hearing requirement—formal or informal—cannot be "meaningful" when the employee charged has not received "explicit written or oral notice, including detailed and comprehensive allegations of wrongdoing, in advance of the informal hearing or hearings." Matthews v. Harney Cty., Or., Sch. Dist. No. 4, 819 F.2d 889, 894 (9th Cir. 1987).

### B. Facial Challenge

Before addressing Plaintiffs' as-applied challenge to AB 225 (codified as Nev. Rev. Stat.§ 391.3129 (2011)), the Court considers the facial validity of the statute and the relevant statutory scheme. See e.g., Citizens United v. Fed. Election Comm'n, 558 U.S. 310, 330 (2010).

### i. *Legal Standard*

An act is unconstitutional on its face if there is "no set of circumstances" under which the act would be valid. United States v. Salerno, 481 U.S. 739, 745 (1987). Accordingly, to succeed in a facial due process challenge to the law, the Plaintiffs must show that there was "no set of circumstances" by which the law could provide the requisite notice and hearing. Id.; Harney Cty., 819 F.2d at 894. However, a public employment statute that does not provide for due process on its face will not be void where a collective bargaining agreement can provide the requirements of due process. Armstrong v. Meyers, 964 F.2d 948, 950 (9th Cir. 1992) ("A public employer may meet its obligation to provide due process through grievance procedures established in a collective bargaining agreement, provided, of course, those procedures satisfy due process.").

### ii. *Discussion*

Plaintiffs have failed to demonstrate there are no set of circumstances under which AB 225 can be applied constitutionally. The tenure-reversion provision under AB 225 does not include a notice or hearing provision. The notice provision under NRS 391.317 lists the requirements that a District superintendent must follow before recommending that a teacher lose their post-probationary status, but this notice provision does not apply to teachers who, like Plaintiffs, have a collective bargaining agreement with the District. See Assem. B. 225 § 4, 76th Sess. (Nev. 2011); Nev. Rev. Stat. § 391.3116 (2011). A collective bargaining agreement can provide the requisite due process protections when the statute is silent in that regard, and it is undisputed that Plaintiffs entered a collective bargaining agreement with the District. Therefore, AB 225 is not facially unconstitutional as the statutory scheme allows a CBA to provide a set of circumstances where the District can implement AB 225 constitutionally.

**C. As-Applied Challenge**

### i. *Legal Standard*

In an as-applied challenge, plaintiffs must show that a law was applied unconstitutionally in their factual circumstances. See e.g., City of Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750, 775 (1988). Plaintiffs argue that AB 225 was unconstitutional as applied to them because the District did not provide the teachers with notice or a hearing before it reverted them to probationary

status under AB 225, and no such procedures were provided under their CBA. Grievance procedures in a collective bargaining agreement must meet the fundamental due process requirements. Armstrong, 964 F.2d at 950. Due process requirements are flexible but, at a minimum, must include oral or written notice of the charges and evidence, notice of available avenues to dispute the charges, and a meaningful hearing where the individual can confront the evidence against them. Loudermill, 470 U.S. at 546; Memphis Light, 436 U.S. at 15; Brady, 859 F.2d at 1554. Additionally, the Supreme Court has held that notice that apprises an individual of an impending deprivation, without informing them of the mechanism to challenge that deprivation, does not satisfy due process. Memphis Light, 436 U.S. at 15.

### *ii. Discussion*

The District argues that it provided Plaintiffs with due process. First, it argues that Plaintiff Teachers received notice that they would lose their post-probationary status from three sources: (1) the legislative process and AB 225's passage, (2) the evaluations, and (3) the Notices of Intent. Additionally, the District argues that the CBA met the due process hearing requirement because Plaintiffs could challenge unsatisfactory evaluations through its grievance and arbitration procedures.

### **1. Notice through the Legislative Process and AB 225**

The Court finds that the District did not provide Plaintiff Teachers with adequate notice because it did not apprise them of the potential loss of post-probationary status or of available avenues to contest that loss. The District argues that "[a]ll citizens are presumptively charged with knowledge of the law," and, as such, Plaintiffs had constructive notice that they would lose their post-probationary status based on the passage of AB 225 in 2011. See Atkins v. Parker, 472 U.S. 115, 130–31 (1985) (citing North Laramie Land Co. v. Hoffman, 268 U.S. 276, 283 (1925) and Texaco, Inc. v. Short, 454 U.S. 516, 532(1982)) (presumption was not overcome where the government provided a 90-day grace period and "every person affected by the change was given individual notice of the substance of the amendment"). Plaintiffs concede that they knew about the reversion provision under AB 225, but the Court finds that awareness of the language of the statute does not and did not inform Plaintiff Teachers of its operation in practice. Such knowledge of the

operation of the statute is significant because it would be these operational processes which would allow the respective teacher to be alerted to the fact that the deprivation process had been initiated. Neither AB 225 nor the then-existing provisions under Chapter 391 specifically link the loss of post-probationary status with available CBA procedures to contest the deprivations. AB 225 amended the 15-day notice provision under NRS § 391.317 to allow former-post-probationary teachers to seek an expedited hearing after they received notice that they would be terminated. See Assem. B. 225 §5, 76th Sess. (Nev. 2011). Accordingly, this expedited hearing provision applied after the deprivation and the notice requirement itself was superseded by the CBA supersedes. AB 225 did not contain a pre-deprivation notice and hearing provision for post-probationary teachers. As no notice provision and hearing provisions are explicitly provided for in AB 225, the statute could not alert a teacher as to when he or she risked losing their post-probationary status.

Even if AB 225 could be construed to alert teachers to the possibility of loss of post-probationary status, it clearly does not provide for notice about available procedures to contest the evaluations through the CBA or otherwise—before or after the deprivation. Additionally, the CBA supersedes the due process provisions under Chapter 391, excluding the three-evaluation provision under 391.3129. See Nev. Rev. Stat. § 391.3116. Thus, any process available to Plaintiff Teachers would necessarily come from the CBA alone. Accordingly, the District cannot show that either the legislative process or AB 225's passage provided notice.

### 2. Notice under the CBA

The CBA also did not provide adequate notice. The CBA provisions that the parties provided do not mention NRS 391.3129, AB 225, or the loss of post-probationary status. Article 14 allows teachers to respond in writing to documents found in their personnel file and the District characterizes this process as "not unusual"—this cannot satisfy due process as it is not a standard practice requiring notice or a hearing. (ECF No. 35, Ex. 2). Additionally, Article 4 characterizes the loss of post-probationary status as a "dispute" arising from the interpretation, application, or violation of the CBA. Yet, it is unclear whether the loss of post-probationary status is a demotion, dismissal, or disciplinary act such that the grievance and arbitration procedures apply. Moreover, the CBA states nothing about the District's duty to provide a teacher with notice that it is

considering terminating a teacher's post-probationary status or what procedures it must provide before such a termination occurs. Instead, it is the teacher who must give the District notice of their intent to grieve. Neither Article 4 nor Article 14 discuss the notice that the District must give to a teacher before terminating their post-probationary or notice that specifically states that teachers may grieve the loss of post-probationary status through the CBA. Placing the burden on a teacher to grieve and thus generate their own notice and pre-deprivation process turns the obligations of due process on its head. The obligation to provide notice and a pre-deprivation hearing is on the District and not the teachers as it is the District which is depriving the teachers of a property right. Accordingly, the CBA does not provide Plaintiffs with either pre- or post-deprivation notice.

### 3. Notice Through the Evaluations

The District argues that because Plaintiff Teachers knew about AB 225, their second unsatisfactory evaluation gave them notice that they would lose post-probationary status as it triggered the reversion provision under AB 225. The evaluations state the charge—unsatisfactory performance— but does not link the charge with the potential loss of post-probationary status or state the procedures available to teachers to contest the loss. At most, the evaluations state that by signing the evaluation, the employee "understands that he/she has the privilege of discussing it with the Human Resources Department." (See ECF No. 34, Ex. D). This statement neither informed Plaintiff Teachers of the charges against them nor informed them of their right to challenge the evaluations. They certainly do not inform the Teachers of the impending loss of their post-probationary status. They also do not mention the CBA or any other process for disputing the loss of post-probationary status. The evaluations do not provide sufficient notice.

### 4. Notice Through the Notices of Intent

Additionally, Plaintiff Teachers received their Notices of Intent a few days (for some, two weeks) after receiving the unsatisfactory evaluations. The Notices of Intent stated in bold, uppercase letters at the top of the page:

PROBATIONARY LICENSED EMPLOYEE

Notice of Intent to Accept Reemployment

(ECF No. 35 Ex. 1; ECF no. 42 at 5). This statement does not state the underlying charges in the evaluation report or mention Plaintiff Teachers' right to a hearing. (See ECF No. 35 Ex 1; ECF No. 34, Ex. C, D). The Notices of Intent also did not mention the opportunity to contest the loss of post-probationary status at a hearing.

Neither the evaluations nor Notices of Intent mention the tenure-reversion provision under either AB 225 or NRS 391.3129. They do not mention whether the District was considering the reverting the Plaintiff Teachers to probationary status or inform Plaintiff Teachers that they could contest the loss of post-probationary status through the CBA. Therefore, neither of these documents provided adequate notice.

### 5. Hearing Requirements under the CBA

"[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Mathews, 424 U.S. at 334. Here, the CBA does not provide a meaningful opportunity for Plaintiffs to challenge the loss of post-probationary status. First, as discussed above, Plaintiffs did not have adequate notice that their post-probationary status was at stake, nor did they have notice of what procedures were available to them to prevent the erroneous deprivation. Accordingly, the lack of notice results in a high risk of erroneous deprivation.

The probable value of pre-deprivation notice and hearing procedures under the CBA would assist Plaintiff Teachers by giving them the opportunity to prevent losing their post-probationary status. The CBA allows teachers to request only an informal meeting where they can discuss their "written responses" to documents in their personnel files. After the informal hearing, and if it is unsuccessful, only the CCEA can request arbitration. It is standard practice for only a union to have the authority to decide whether to arbitrate because "[a]llowing individual employees to decide which claims to arbitrate would undermine [the grievance and arbitration] process." Armstrong, 964 F.2d at 950. However, the grievance and arbitration procedures must satisfy due process requirements, and the lack of notice invalidates this arrangement.

The CBA has additional defects: it is unclear whether the CBA allows a teacher to dispute the loss of status or only the underlying evaluation. The District attached arbitration results from unrelated cases showing two instances where an arbitrator changed an evaluation rating from a "2"

to a "3," or changed a "1" to a "2," thus changing the overall evaluation rating to "satisfactory." (ECF No. 35 at Ex. F). The District argues that rating change is evidence that an arbitrator can change an evaluation. Yet, it remains unclear whether the arbitrator has the power to reinstate a teacher to post-probationary status based upon a simple change in an evaluation. Without clear authority under the CBA to prevent or reverse the loss of post-probationary status, the arbitration proceeding does not provide a legally adequate means for challenging the property deprivation. Because none of the arbitrations show that the CBA grievance and arbitration procedures provide a meaningful opportunity for Plaintiff Teachers to contest the loss of post-probationary status, the District has not shown that the CBA provided due process.

Lastly, the District has not articulated any reason why it could not provide notice and a hearing before divesting Plaintiff Teachers of their post-probationary status; as such, it has not demonstrated any fiscal or administrative burdens that outweigh the value of additional procedural safeguards. Accordingly, the District should have provided pre-deprivation notice and hearing.

### *a. Post-deprivation Process under the CBA*

Plaintiff Rowley's case highlighted another defect with the CBA: there is no right to a hearing. Here, only CCEA can request arbitration. Ordinarily, a public employer can evade having robust pre-deprivation procedures when it is unfeasible to do so and it has a CBA that provides adequate grievance and arbitration procedures. Zinermon v. Burch, 494 U.S. 113, 132 (1990) (internal citations omitted). However, as a post-deprivation remedy, the CBA must meet due process requirements. Even robust post-deprivation procedures cannot cure the pre-deprivation due process deficiencies. Post-deprivation procedures are an exception to the rule that a pre-deprivation hearing is always required when feasible. Samson, 683 F.3d at 1059; Zinermon, 494 U.S. at 132. The District has not provided any argument as to why it did not provide pre-deprivation notice or hearing, arguing instead that the CBA provided all the process that was due. The District did not provide Plaintiff Teachers with pre-deprivation notice about the loss of post-probationary status or notice about available procedures to dispute the loss through the CBA. The CBA did not provide for a meaningful access to a hearing because only CCEA could request arbitration and it is questionable whether an arbitrator could undo the loss of post-probationary

status to reinstate a teacher. Moreover, the District has not articulated any burden, much less one that is proportional to the deprivation Plaintiff Teachers suffered from the loss of post-probationary status to justify the lack of a pre-deprivation hearing.

Moreover, the Court finds that the District did not provide the Plaintiff Teachers with a sufficient post-deprivation hearing process. Even a post-deprivation process must be directly linked to sufficient notice regarding the loss of the property interest. In this case, the Court has found that no such notice occurred. While the Plaintiff Teachers may have been aware of the CBA's grievance procedures generally, the District would have had to have linked a post-deprivation hearing or grievance procedure explicitly with the loss of the post-probationary status. Indeed, as noted the CBA does not even reference the loss of post-probationary status in the context of grievance and arbitration procedures. Contrary to the Defendants assertions, the mere fact that a teacher may have sought to grieve such a loss of status does not mean that a process was actually available under the CBA or provided for in a manner that satisfies due process. The CBA does not explicitly identify the loss of this post-probationary status by operation of a state law as an issue that may be grieved. This is significant because even the ability to address a negative evaluation would have to clearly reference the statute in order to even possibly impact the loss of status pursuant to state law. That is to say that CBA would need to indicate that its reversal of an evaluation would be sufficient to undo or reverse the process triggered by state law. The CBA does not contain such language or provide for such a clear process of the reversal of an evaluation that would reverse the process triggered by state law. The Court thus finds that the CBA does not unequivocally provide for a post-deprivation process in the context of grievances and then arbitration that apply to the loss of post-probationary status pursuant to state law. The CBA also does not provide adequate notice of a post-deprivation process. Thus, the District did not provide Plaintiff Teachers with adequate due process through the CBA.

### D. Policy or Practice Under Section 1983

#### i. *Legal Standard*

The District also argues that Plaintiffs' Section 1983 claim also fails because Plaintiffs did not establish that the District had an unconstitutional policy, practice, or custom to state a Monell

claim. Section 1983 does not create substantive rights but merely is a device for enforcing certain Constitutional provisions or federal statutes. See Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617, 99 S. Ct. 1905 (1979). The elements of a Section 1983 claim are: (1) violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a "person" (4) acting "under color of state law." Crumpton v. Gates, 947 F.2d 1418, 1420 (9th Cir. 1991).

### ii. Discussion

Having found that Plaintiffs have established a constitutional violation under the Due Process Clause, the Court must determine whether this violation represents a policy or practice by the District. This Court previously held that Plaintiffs had a statutorily created property interest in post-probationary status, under AB 225, deprivation of which entitles Plaintiffs to due process under the Fourteenth Amendment. (ECF No. 24 at 6-9). The Court finds that the Plaintiffs have established the existence of a policy or practice of failing to provide adequate notice of the loss of post-probationary status and of failing to provide an explicit and adequate pre-deprivation or post-deprivation remedy. Defendants cannot dispute that the failure to provide explicit notice of the loss of post-probationary status was not policy or practice of the District. The District did not provide in any of its routine correspondence to Plaintiff Teachers adequate notice or reference to a hearing. The Court finds that the District as a matter of practice and custom did not provide adequate notice to the Plaintiff Teachers.

### E. Organizational Standing

### i. Legal Standard

The District argues that CCEA lacks organizational standing because: (1) its interests are not germane to AB 225 because AB 225 concerns probationary and post-probationary procedures and CCEA represents all teachers, regardless of their status; and (2) that CCEA pleaded an as-applied challenge seeking money damages so its claim requires that its members participate. To bring a claim properly before a court, a plaintiff must satisfy three basic standing requirements: 1) the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent; 2) there must be a causal

connection between the injury and the conduct complained of; 3) it must be "likely" that the injury will be "redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). An organization suing on behalf of its members has standing if: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Washington State Apple Advert. Comm'n, 432 U.S. 333, 343 (U.S. 1977). Further, "An organization suing on its own behalf can establish an injury when it suffered both a diversion of its resources and a frustration of its mission." La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest, 624 F.3d 1083, 1088 (9th Cir. 2010) (internal quotation and citation marks omitted).

### ii. Discussion

The Court finds that CCEA has standing to sue on behalf of its members. CCEA meets elements (a) and (b). Plaintiff Teachers have standing to sue in their own right as they were injured when the District divested them of their post-probationary status. Further, the CCEA's interest in recovering Plaintiff Teachers' post-probationary status is germane to its interests because it bargains on behalf of teachers with respect to their terms and conditions of employment. (ECF No. 35 at 4; ECF No. 1 at 5-6). As to element (c), CCEA challenged AB 225 on its face stating that it does not provide any pre- or post-deprivation hearing before a formerly post-probationary teacher is non-renewed and this facial challenge does not require Plaintiff Teachers' participation. (ECF No. 1 at 9). Therefore, CCEA has organizational standing to sue the District in this case. The Court thus also grants summary judgment in favor CCEA as well.

## F. Statute of Limitations

### i. Legal Standard

The District argues that Plaintiffs' complaint is time-barred because Plaintiffs filed their complaint on June 18, 2015—two years and six days after Plaintiffs lost their post-probationary status (June 6, 2013). "The statute of limitations applicable to an action pursuant to 42 U.S.C. § 1983 is the personal injury statute of limitations of the state in which the cause of action arose." Alameda Books, Inc. v. City of Los Angeles, 631 F.3d 1031, 1041 (9th Cir. 2011). The applicable

statute of limitations in Nevada is two years. Rosales-Martinez v. Palmer, 753 F.3d 890, 895 (9th Cir. 2014) (citing NRS §11.190(4)(e)). However, "federal law determines when a cause of action accrues and the statute of limitations begins to run for a [Section] 1983 claim." Rosalez-Martinez, 753 F.3d at 895. Ordinarily, the claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." Id.

  *ii. Discussion*

The Parties agree that Plaintiff Teachers lost their status at the end of the 2012-13 school year. NRS 388.080 provides that the school year "ends on the last day June." Plaintiffs, therefore, timely filed their lawsuit on June 18, 2015. (ECF No. 1). Additionally, Plaintiffs argue that the claim had not accrued before the end of the 2012-13 school year because they did not receive notice that they would lose their post-probationary status such that they could have "know[n] or ha[d] reason to know of the injury which is the basis of the action." Rosalez-Martinez, 753 F.3d at 895. The District concedes that Plaintiffs retained their post-probationary status until after the end of the 2012-13 school year; it has therefore foreclosed this argument.

The Court further finds that the Plaintiffs would not have been alerted, at the earliest, to their claim until their probationary contracts were presented. The Court finds that this occurred for all Plaintiffs after the end of June 2013.

The Court finds that Plaintiffs' due process claim is not time-barred.

Having satisfied all of the requirements of their Section 1983 claim, the Court grants summary judgment in favor of the Plaintiffs.

**V.    CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment (ECF No. 34) is GRANTED.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 35) is DENIED.

**IT IS FURTHER ORDERED** that declaratory relief is GRANTED in favor of Plaintiffs. The Court declares that the District deprived Plaintiffs of due process when it divested them of their post-probationary status without notice or a meaningful chance to be heard.

**IT IS FURTHER ORDERED** that Plaintiffs be reinstated as post-probationary teachers of the District with back pay and benefits.

**IT IS FURTHER ORDERED** that a status conference be set for October 19, 2018 at 2:00 PM in LV Courtroom 7C to determine the manner of awarding back pay and other relief in this case.

DATED: September 30, 2018.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**