UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JILL LEFF et al,<br><br>Plaintiffs,<br><br>v.<br><br>CLARK COUNTY SCHOOL DISTRICT,<br><br>Defendant. | Case No. 2:15-cv-01155-RFB-EJY<br><br>**ORDER** |

**I.      INTRODUCTION**

This Court previously held in this case that the Defendant violated Plaintiffs' due process rights by converting their post-probationary status as teachers to probationary status without sufficient notice. ECF No. 58. The Court further ordered that each of the Plaintiffs would be entitled to a separate hearing before the Court to determine the appropriate remedy for the respective plaintiff. ECF No. 63. This order addresses the specific remedy for Plaintiff Rowley.

The Court incorporates by reference its previous rulings and the procedural history in this case. The Court held an evidentiary hearing regarding Rowley's relevant teaching experience and the evaluation process and determination at issue in this case on June 10, 2020. ECF No. 99. The parties submitted post-hearing briefing. ECF No. 105.

The Court addresses two issues in this order. First, the Court determines what remedy Rowley should receive for the due process violation previously noted by the Court. Second, the Court determines what damages, if any, should be awarded to Rowley for the due process violation. The Court finds that while there was a notice deficiency as to the loss of post probationary status in this case, Rowley was not harmed by this lack of notice. Ultimately, Rowley received all process that was appropriate and due to prevent an erroneous deprivation, so the notice violation did not

injure him.

## II. LEGAL STANDARD

Whether conduct amounts to a violation of procedural due process rights requires a two-step inquiry: "the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Ky. Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989) (internal citations omitted).

As noted, this Court previously found that Rowley, like his co-plaintiffs, had a protected interest in his post-probationary status. ECF No. 58. The Court also found that the plaintiffs had not received sufficient notice of the loss of their post-probationary status due to their second consecutive negative evaluation. Id. The Court left for later determination the remedy for this due process violation, including whether any damages resulted from this failure to provide adequate notice and the failure to provide due process proceedings to which the plaintiffs were entitled. Thus, the legal inquiry for this order focuses on what process Plaintiff Rowley was due and whether he suffered any damage from not receiving this process.

In determining what process is due and whether it should be provided before or after a deprivation, courts apply the Mathews balancing test. Brady v. Gebbie, 859 F.2d 1543, 1554 (9th Cir. 1988) (citing Mathews v. Eldridge, 424 U.S. U.S. 319, 334–35 (1976)). The Mathews test "balances 1) the private interest that will be affected, 2) the risk of an erroneous deprivation of that interest through the procedures used, and 3) the additional cost and administrative burdens those additional procedures would entail." Id. (internal citations omitted).

"A public employer may meet its obligation to provide due process through grievance procedures established in a collective bargaining agreement, provided, of course, those procedures satisfy due process." Armstrong v. Meyers, 964 F.2d 948, 950 (9th Cir. 1992).

In a due process hearing, it is the employer's burden to persuade the neutral arbiter that the actions it took to deprive the employee of his or her property interests were justified. Vanelli v. Reynolds School Dist., 667 F.2d 773, 780 n.12 (9th Cir. 1982) (stating that the employer has the

burden of persuasion even if employee brings the matter forward); Carey v. Piphus, 435 U.S. 247, 260 (1978) (addressing an order of post-deprivation hearing and referring to the school officials, having the burden to "prove on remand that '[respondents] would have been suspended even if a proper hearing had been held'" (internal citations omitted)); see also Mount Healthy City Sch. District Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977) ("[T]he District Court should have gone on to determine whether the [defendant] Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of protected conduct."). The employer must establish its position by a preponderance of the evidence. Mount Healthy, 429 U.S. at 287.

### III.   FACTUAL FINDINGS

The Court makes the following factual findings based upon a preponderance of the evidence.

Rowley was previously a teacher with the Clark County School District (the "District" or "CCSD"). He had taught for enough years prior to 2012 that he had achieved the status of being a post-probationary teacher under Nevada law. See Nevada Revised Statutes ("NRS") § 391. At the close of the 2011-12 school year, Rowley received a negative evaluation (the "2012 evaluation") from his supervisor. Rowley filed a grievance with respect to this evaluation pursuant to the collective bargaining agreement (the "CBA") between the District and the teachers' union, the Clark County Education Association (the "CCEA").

The CBA allows for a three-step process for resolving grievances. At Step One, the teacher and the District and their respective representatives meet informally and try to mediate the grievance. If Step One is not successful, a teacher and the CCEA in Step Two may request a formal meeting and conference with senior District employees regarding the grievance. The District at Step Two must grant or deny the grievance in writing to the teacher and the CCEA. If the grievance is denied, the teacher and the CCEA at Step Three may seek an arbitration hearing pursuant to the hearing process agreed upon by the District and the CCEA. This arbitration hearing is presided over by an independent arbitrator selected from a panel mutually agreed upon

by the parties pursuant to the CBA. The decision of the arbitrator at Step Three is final and binding on the parties unless the arbitrator commits "procedural errors prejudicing the rights of either party" as defined under federal law. Rowley's grievance regarding the 2012 evaluation process was denied at Step Two and no arbitration was sought.

Rowley received a subsequent and consecutive negative evaluation near the end of the 2012-13 school year (the "2013 evaluation"). Rowley filed a grievance on May 21, 2013 to the 2013 evaluation. He alleged that his supervisor, Principal Shawana Jessen, had violated the terms of the CBA regarding discipline and evaluation when she gave him a negative evaluation. In his grievance, Rowley sought as a remedy for these alleged violations that the 2013 evaluation "be revised and reissued as a satisfactory evaluation." The grievance was initially denied informally by the employee relations department of the District at Step One. The grievance was also denied in writing by the District at Step Two. Rowley and the CCEA then notified the District that they were formally seeking a Step Three arbitration hearing. Prior to this hearing, Rowley and the CCEA received all records, including the evaluation notes and related documentation, underlying the 2013 evaluation. The arbitrator held a hearing pursuant to an agreement of the parties on February 11, 2014. The arbitrator issued a summary decision on that same day. The arbitrator denied the grievance in its entirety, finding that the 2013 evaluation and the process by which it had been conducted "did not violate the CBA, CCSD Policies Regulations or N.R.S. [Section] 391." Neither Rowley nor the CCEA sought any further review of the arbitrator's decision, including by filing an appeal of the decision based upon any prejudicial "procedural errors."

### IV.   DISCUSSION

#### A.   Rowley Received All Process That Was Appropriate and Due

The Court finds that Plaintiff Rowley is not entitled to any further due process relief or to any compensatory damages. The Court reaches this finding based upon its review of the record and its ultimate conclusion that Rowley received all the process he was due in connection with the loss of his post-probationary status by means of the grievance process under the CBA, including

the arbitration hearing that was held subsequent to his 2013 evaluation—the evaluation which triggered his loss of status.

The Court reaches this conclusion based upon its analysis of the Mathews factors in the context of the facts of this case. First, the Court finds that Rowley had a substantial interest in his continued post-probationary status as a teacher. Mathews, 424 U.S. at 335. The Defendant does not, and could not, contest this finding.

Second, the Court finds that risk of an erroneous deprivation or determination for Rowley under the grievance procedures under the CBA is quite small. Id.; see also Meyers, 964 F.2d at 950. The CBA had a quite robust process for addressing disputes over negative evaluations. The ultimate step in this process was the possibility of an arbitration hearing before a neutral arbitrator conducting an arbitration pursuant to the rules and procedures of the American Arbitration Association (the "AAA"). The Ninth Circuit has acknowledged such procedures are a "universally accepted method of resolving employment disputes" and which satisfy due process. Meyers, 964 F.2d at 950. In Meyers, the Ninth Circuit explicitly held that such procedures establish due process even when there has been no arbitration. Id.

The Court finds Meyers to be controlling in this case. Indeed, this case presents an even more compelling case than Meyers, since Rowley actually requested and received an arbitration hearing. Id. Rowley and his union sought and received an arbitration regarding the crucial second negative evaluation, after Rowley received the evaluation and was placed on notice of specific allegations and evidence against him. Furthermore, the Court finds that this hearing actually involved and reviewed the same substantive issues as to the content and process of the second evaluation that were raised in the hearing before this Court. In his "Grievance Complaint" form, dated May 21, 2013, that was submitted to initiate the grievance process, Rowley alleged violations of "Article 14 – Teacher Personnel Files" and "Article 36 – Disciplinary Procedures." These sections of the CBA outline the process and safeguards for teacher evaluations and their permanency.[1] Prior to the hearing, Rowley was provided full access to whatever documents the

---

[1] The Court further finds that, pursuant to the CBA, Rowley's second negative evaluation could have been reversed and removed from Rowley's personnel file. This means that this evaluation was not final until the arbitrator reached his decision. As a result, Rowley's property

- 5 -

District had in its possession. Rowley had the opportunity at the hearing to present evidence and call witnesses pursuant to the procedures of the AAA as adopted under the CBA. While the Court does not have in the record a full transcript of the arbitration proceedings, the Court does find that it is clear based upon the grievance form noted above and the final arbitration order that the arbitrator was presented with and resolved challenges to the District's policies/procedures/regulations and the requirements of NRS chapter 391. The arbitrator denied the grievance in "its entirety" and found:

> "The CCSD did not violate the CBA, CCSD Policies, Regulations or NRS 391 when it issued Glen Rowley an unsatisfactory evaluation date[d] [April 11, 2013] containing 9 unsatisfactory ratings of '2.' The Arbitrator further finds that Mr. Rowley was provided all written observations by the District and offered assistance, guidance and suggestions for his overall improvement in the classroom."

This written final order of the arbitrator demonstrates that the arbitrator reviewed and considered whether the District had violated its own regulations as well as the relevant statutory requirements under Section 391.

Finally, the Court finds that consideration of the third <u>Mathews</u> factor as applied to this case supports the conclusion that the grievance/arbitration procedure here satisfies due process. <u>Mathews</u>, 424 U.S. at 335. The Court concludes, as the Ninth Circuit did in <u>Meyers</u>, that "[t]here is a strong public and private interest in maintaining an effective grievance/arbitration process to settle disputes between employers and employees." 964 F.2d at 951. The use of a collective bargaining agreement for this purpose creates "uniformity" in the resolution of disputes between public employers and their employees. <u>Id.</u>

The Court thus finds that Rowley received the procedural due process to which he was entitled prior to being permanently deprived of his post-probationary status following his second consecutive negative annual evaluation.

The Court further holds that the lack of notice identified in this Court's prior order as to

---

deprivation—the loss of his post-probationary status—either did not occur or was not final until the arbitrator's final decision.

- 6 -

the loss of post-probationary status due to this second evaluation does not alter the Court's finding in this case. Rowley argues that he failed to receive a timely due process hearing, and that on the date he was able to obtain an arbitration (February 11, 2014), he "had been reverted to a probationary employee and had already received two out of the three performance evaluations in the 2013-14 school year to which he was entitled," both of which resulted in an "unsatisfactory" rating. Because Rowley had already received unsatisfactory ratings as a probationary teacher on November 27, 2013, and again on January 31, 2014 – two weeks before the arbitrator issued the decision on February 11, 2014 – Rowley argues that "his bargaining position was eviscerated." Rowley contends that the District had no incentive to compromise in light of the two negative evaluations, but that the District might have approached arbitration differently had Rowley received timely notice – in other words, had he received notice well before receiving the unsatisfactory 2013-2014 evaluations. Rowley also argues that if he had received notice at the end of the 2012-2013 school year or beginning of the 2013-2014 school year, he "would still have had access to records documenting the enrollment of students in his class," which "could have been used to explain more adequately why the major points raised as the basis for his 'unsatisfactory' ratings under the domains of 'Learning Environment' and 'Instruction' should not have been the basis for an overall rating of 'unsatisfactory." Rowley adds that he also "could have requested, and should have had access to, information about whether those other [first grade teachers'] classrooms included as many English language learners and students with Individual Education Plans ("IEP's") for Special Education as his class did."

The Court finds that Rowley's contentions are wholly speculative, and do not constitute persuasive or credible evidence that he could have or would have approached his arbitration differently had he been given notice. The evidence in the record and from the hearing reveals that Rowley initiated the grievance procedure – which ultimately culminated in the February 11, 2014 arbitration – on May 21, 2013, just six weeks after his 2013 evaluation. The Court's earlier order did observe that placing "the burden on a teacher to grieve and thus generate their own notice and pre-deprivation process turn[s] the obligations of due process on its head" – however, to the extent that Rowley received any untimely notice, the Court finds that this defect did not actually hamper

or prejudice Rowley's ability to initiate the CBA grievance process, which is the relevant inquiry before the Court in determining how to fashion a remedy for Rowley. The Court is unpersuaded that any delay in notice prejudiced Rowley due to his intervening negative evaluations, as the question before the Court is not whether the District's conduct undermined Rowley's ability to negotiate – it is whether the process afforded Rowley was sufficient. Even though Rowley did not receive notice of the potential loss of post-probationary status, he *did* receive notice of his negative evaluation and the grievance process, and he was able to proceed with the grievance process in a timely manner.[2]

As for Rowley's argument that he could have received more adequate documentation to challenge his 2013 evaluation if he had received earlier notice, the Court again reiterates that Rowley and the CCEA received the evaluation notes and related documentation underlying the 2013 evaluation, which would have been sufficient for Rowley to mount a defense. There is no indication in the record that Rowley did not receive the records he sought. Nor is there credible evidence, including his testimony, to support Rowley's contention that any enrollment records by demographic group sought but not turned over would have supported Rowley's suggestion that his performance was impacted by the number of non-native-English-speaking students or students with IEPs in his class, sufficient to alter the outcome of his arbitration.

In sum, the Court cannot find, based on the record before it, that the alleged lack of timely notice regarding the loss of post-probationary status as opposed to the actual notice of the negative evaluation was so unfair or prejudicial to Rowley that it rendered the subsequent grievance and arbitration process deficient. Rowley had notice of the negative 2013 evaluation that triggered the loss of his post-probationary status, and he indeed grieved that evaluation to completion and

---

[2] Moreover, the Court notes that the parties previously agreed that the deprivation of the property interest (post-probationary status) occurs at the end of the school year in which the teachers have received the negative evaluation. See ECF No. 77 at 15:8-21. In other words, a teacher subject to a negative second evaluation "get[s] non-renewed at the end of the year," and "come[s] back on [the first day of the next school year] as probationary." Id. It is clear from the record that Rowley initiated the grievance procedure *before* he was officially non-renewed at the end of the 2012-2013 school year – in other words, before he had been deprived of the property interest.

declined to pursue an appeal of the arbitrator's decision. It is not this Court's role to conduct an appellate review of the merits of the due process proceeding itself; the Court's role is merely to determine whether the process itself is sufficient.[3]

The Court does take the opportunity here to clarify its more general statement about the CBA made in its September 2018 Order. In that Order, the Court found that "the CBA does not provide for a meaningful opportunity to be heard," and "the CBA also did not provide adequate notice," as the CBA provisions "do not mention NRS 391.3129, AB 225, or the loss of post-probationary status." The Court finds that these statements were overly broad and not properly limited.[4] The Court was not intending to suggest that the CBA could *never* provide due process in the loss of post-probationary status,[5] but merely that the CBA failed to identify this loss as a basis for a grievance. However, due process analysis in terms of the extent of the violation and its effects in terms of fashioning a remedy must be determined on a case-by-case basis. Matthews, 424 U.S. at 324 (explaining that "[d]ue process is flexible and calls for such procedural protections as the particular situation demands"). In the case of Plaintiff Rowley, the grievance/arbitration process actually *did provide* a meaningful opportunity to be heard as it related to the underlying negative evaluation that triggered his loss of post-probationary status, since Rowley initiated and received due process for the precise evaluation which triggered his loss of post-probationary status. The record suggests that this was not the case for all the plaintiffs in this case. Indeed, had Rowley not

///

---

[3] The Court notes that it initially asked parties to comment on any delay in the grievance procedure and any damages flowing therefrom. At that time, the Court did not have full record of the evaluation and grievance process. Upon receiving the record submitted in connection with the evidentiary hearing, the Court realized that due process, consistent with the Mathews factors, had, in fact, been provided to this particular plaintiff in connection with the second negative evaluation that triggered the post-probationary loss.

[4] The overly broad language did lead the Court to subsequently strike that part of its September 2018 Order that suggested that damages would immediately be available as a remedy for the general due process notice violation as remedies would need would to be determined on an individual basis. ECF No. 63.

[5] The Court previously noted in its September 2018 Order that it was not finding that a CBA could never provide due process for the loss of post-probationary status and cited to Meyers in denying the facial challenge to the relevant statutes.

gone through the grievance process as to the second negative evaluation, the Court might have reached a different conclusion.

### B. Remedy

The Court finds that Rowley is not entitled to any additional process or compensatory damages (in the form of backpay) stemming from undue delay in this case. The Court so concludes because Rowley received a due process hearing after his second evaluation. There was no undue delay as to the process. He participated in a hearing in that case. He knew that he pursued his grievance up through a hearing before a neutral arbitrator.

The Court does, however, reiterate its finding that the District nevertheless failed to provide notice to Rowley of the impending loss of his post-probationary status, triggered by this 2013 evaluation. The failure to provide notice entitles Plaintiff to nominal damages even if the Court finds he suffered no injury. See Carey v. Piphus, 435 U.S. 247, 266 (1978) ("Because the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions . . . the denial of procedural due process should be actionable for nominal damages without proof of actual injury."). Further, the Court finds that Plaintiff is entitled to an award of attorney fees, despite the lack of compensatory damages, because Rowley and his co-plaintiffs' suit served a significant public purpose. See Morales v. City of San Rafael, 96 F.3d 359, 363 (9th Cir. 1996) (stating that "not all nominal damages awards are *de minimis*," and that a court may award fees even when only nominal damages are awarded if "the legal issues on which the plaintiff claims to have prevailed" are significant, and the "public purpose" of the plaintiff's litigation is served); Farrar v. Hobby, 506 U.S. 103, 112 (1992) (stating that a plaintiff who wins only nominal damages is still a prevailing party under § 1988). Here, Plaintiffs, including Rowley, have prevailed on the subject of notice in his procedural due process claim, and the Court finds it significant that the District failed to notify teachers of the possible loss of post-probationary status that would ensue following a second consecutive negative evaluation. Further, the Court is mindful that Rowley had to wait until the issuance of this Order to learn that the arbitration he received

constituted all the process he was due. In light of those considerations, the Court grants attorney's fees, and costs attributable to Plaintiff Rowley in the sum of $19,542.00.

### V.  CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant shall reimburse Plaintiffs in the sum of $19,542.00.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and close this case.

DATED: December 9, 2021.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**